**UNITED STATES of America, Plaintiff,**

v.

**George W. TUCKER, Defendant.**

**No. 96–1361M.**

United States District Court,
D. Colorado.

Aug. 27, 1996.

Martha Paluch, Assistant U.S. Attorney, Denver, CO, for the U.S.

George Tucker, Ft. Collins, CO, pro se.

**MEMORANDUM OPINION AND ORDER**

BORCHERS, United States Magistrate Judge.

THIS MATTER came before the Court for trial on August 15, 1996 in Estes Park, Colo-

---

rado. Plaintiff was represented by Martha Paulich, Assistant United States Attorney, and Defendant appeared pro se. The Court heard the testimony of witnesses and argument of counsel and Defendant. The matter then was taken under advisement.

## I.

Testimony was received from Special Agent Glen Pye, United States Fish and Wildlife Service (USFW), Defendant and Scott Bergherr, a friend of Defendant. The evidence was in dispute as to certain points. The Court finds from the testimony and exhibits that the following occurred.

On January 18, 1996, Defendant travelled to his hunting lease which was located in northeast Weld County, Colorado near the town of Scottsdale. This lease area, which consisted of a few acres, was situated along the South Platte River. Defendant was joined on this leased acreage by other persons who either had an interest in the lease or were friends of those who did. ·

On January 18, 1996, Defendant examined his shotgun. At that time, Defendant observed that the shotgun was capable of holding four shells in the magazine and one in the chamber. Defendant was aware that his shotgun could only hold legally a total of three shells. Defendant found a branch from a cottonwood tree. Defendant then fashioned from the branch a crude plug that he inserted into his shotgun. Defendant believed that this would preclude any more than three shells from being in the weapon at that time.

On January 20, 1996, Agent Pye was working in the area near the leased land. Agent Pye was doing compliance checks with hunters. Agent Pye had made radio contact with Colorado Division of Wildlife agents in the same area. All agents had heard shots fired and were attempting to make contact with hunters in the area. Agent Pye had seen killed waterfowl earlier in the morning.

At approximately 8:00 a.m., Agent Pye made contact with Defendant outside of a blind. ·Agent Pye identified himself as a law enforcement officer with USFW. Defendant and Agent Pye talked for some period of time. Defendant acknowledged that he was hunting and had been in the blind. Defendant indicated that he had not shot any waterfowl that morning. ·

Agent Pye indicated that he needed to conduct a compliance check. ·Agent Pye checked Defendant's hunting license and duck stamp. Everything was in order. Agent Pye then asked to check the shotgun. After examination of the gun, Agent Pye believed that the weapon was capable of holding four or more shotgun shells. He so advised Defendant.

Agent Pye removed all ammunition from the, shotgun and then attempted to load it with various sizes of shells. Agent Pye was able to load three shells into the magazine. This allowed for a fourth shell to be loaded into the chamber of the shotgun. Agent Pye advised Defendant that a violation had occurred.

Defendant advised the officer that he had used the wood from the tree as a plug. Defendant argued that he was legal, as the wood precluded more than two shells from being inserted in the magazine. Agent Pye testified that he had observed a small piece of wood, but that it was not sufficient to preclude a fourth shell being inserted into the shotgun.

Agent Pye concluded the compliance check shortly thereafter. He secured information from Defendant that would allow issuance of a violation notice. No other violations were found. The violation notice was mailed to Defendant several days after the encounter. Defendant then entered a plea of not guilty and set the matter for trial.[1]

## II.

Defendant is charged with a violation of 16 U.S.C. § 703 and 50 C.F.R. § 20.21(b). This Court has found no published opinions concerning § 20.21(b).

The statutory provision reads as follows:

---

1. Plaintiff filed an information which superseded the violation notice and became the charging document.

Unless and except as permitted by regulations made as hereinafter provided in this subchapter, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, deliver for shipment, ship, export, import, cause to be shipped, exported, or imported, deliver for transportation, transport or cause to be transported, carry or cause to be carried, or receive for shipment, transportation, carriage, or export, any migratory bird, any part, nest, or egg of any such bird, or any product, whether or not manufactured, which consists, or is composed in whole or in part, of any such bird or any part, nest, or egg thereof, included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 (39 Stat. 1702), the United States and the United Mexican States for the protection of migratory birds and game mammals concluded February 7, 1936, the United States and the Government of Japan for the protection of migratory birds and birds in danger of extinction, and their environment concluded March 4, 1972 and the convention between the United States and the Union of Soviet Socialist Republics for the conservation of migratory birds and their environments concluded November 19, 1976.

16 U.S.C. § 703. Pursuant to this section, the USFW has promulgated 50 C.F.R. § 20.21 which reads, in part, as follows:

§ 20.21 Hunting methods.

Migratory birds on which open seasons are prescribed in this part may be taken by any method except those prohibited in this section. No person shall take migratory game birds:

(b) With a shotgun of any description capable of holding more than three shells, unless it is plugged with a one-piece filler, incapable of removal without disassembling the gun, so its total capacity does not exceed three shells.

This is the section that Defendant is alleged to have violated.

■ The Court has found no published case dealing with § 20.21(b). Cases dealing with other regulations promulgated pursuant to the Migratory Bird Treaty Act (MBTA) have held violations to be strict liability crimes. *United States v. Boynton,* 63 F.3d 337 (4th Cir.1995); *United States v. Engler,* 806 F.2d 425 (3rd Cir.1986), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987); *United States v. Wood,* 437 F.2d 91 (9th Cir.1971). Only the Fifth Circuit appears to have held that proof of scienter is required. *United States v. Garrett,* 984 F.2d 1402, 1410 n. 17 (5th Cir.1993). This Court holds that the majority position is correct and that violations alleged under the MBTA are strict liability crimes.

■ The allegation against Defendant is thus one of strict liability. The question is simply one of whether Defendant had a shotgun capable of holding more than three shells. Whether Defendant intended to violate the regulation is immaterial.

■ The evidence presented to the Court indicated that Defendant was not in compliance with the regulation when he first arrived at the lease on January 18, 1996. In order to come into compliance, Defendant took a branch from a cottonwood tree and made a plug. Defendant testified that he had hunted for virtually all of his life. It is difficult, then, to understand why Defendant would not have taken the steps necessary to comply with the regulation *before* arriving at the lease area. Further, it is difficult to fathom that a seasoned hunter such as Defendant would not have secured a more formalized plug to insure compliance.

The evidence leads this Court to the conclusion that the plug made from the cottonwood tree failed. The plug was of soft wood, and it simply broke. When Agent Pye examined the shotgun on January 20, 1996, he was able to load three shells into the magazine. The three shells in the magazine, along with the ability to put a shell in the chamber, lead to the violation. It was immaterial that Defendant did not intend to violate § 20.21(b). Defendant knew that he had to have a plug and chose to utilize one made from a tree branch that failed.

IT IS HEREBY ORDERED that Defendant is found guilty of the violation of 50 C.F.R. § 20.21(b), as alleged in the information.

### ORDER

THIS MATTER comes before the Court on its own motion. The Court has found Defendant guilty of the charge of violation of 50 C.F.R. § 20.21(b). Defendant was issued a collateral forfeiture violation notice initially in this case. This Court will not penalize Defendant for exercising his right to contest the violation notice and to have a trial.

The Court heard the testimony of witnesses and understands what occurred. The Court has found that the plug failed because it was made of soft wood. The Court has specifically found that Defendant did not intentionally violate § 20.21(b).

The Court will set September 13, 1996 at 10:00 a.m. for sentencing. At that time, Defendant may appear and may offer any thoughts or comments he may have prior to imposition of a sentence. Defendant also may elect to not appear, and the Court will impose a fine of $50.00 and court costs of $10.00. Defendant will be granted up to and including December 1, 1996 in which to pay the fine and costs.

Defendant is advised that he has a right to appeal his conviction to a United States District Judge. Defendant is advised that he has ten days in which to appeal. Defendant will be provided a copy of Fed.R.Crim.P. 58 which governs appeals. Defendant is advised that September 13, 1996 is the date when judgment will be entered against him and his time for appeal will begin to run.

IT IS HEREBY ORDERED that a sentencing date is set for September 13, 1996 at 10:00 a.m. in C–169, United States Court House, Denver, Colorado and Defendant may appear if he chooses; and

IT IS FURTHER ORDERED that Defendant may chose not appear and a fine of $50.00 and $10.00 in costs will be assessed, with Defendant granted up to and including December 1, 1996 in which to pay his fine and costs; and

IT IS FURTHER ADVISED that the Clerk will provide a copy of Fed.R.Crim.P. 58 to Defendant, as that rule will govern appellate rights that Defendant has in this matter.